Christine L. Hawkins (SBN 233502)
Randall K. Bernard   (SBN 181522)
**HAWKINS PARNELL & YOUNG LLP**
1 Post Street, Suite 2400
San Francisco, California 94104
Telephone: (415) 766-3200
Facsimile:  (415) 766-3250
Email: chawkins@hpylaw.com
          rbernard@hpylaw.com

Attorneys for Defendant
**TRIPLE A MACHINE SHOP, INC.**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS C. PAYNE and SUSAN PAYNE,<br><br>Plaintiffs,<br><br>vs.<br><br>TRIPLE A MACHINE SHOP, INC., et al.,<br><br>Defendants. | Case No. 3:22-cv-549<br><br>**DEFENDANT TRIPLE A MACHINE SHOP, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>State Complaint filed:  November 10, 2021 |

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:**

Pursuant to Title 28 U.S.C. §§ 1442(a)(1) and 1446, Defendant TRIPLE A MACHINE SHOP, INC. ("TRIPLE A") gives notice of removal of an action filed against it in the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

In support, TRIPLE A respectfully offers the following:

### PRELIMINARY MATTERS AND PROCEDURAL HISTORY

1.        On November 10, 2021, DENNIS C. PAYNE and SUSAN PAYNE ("Plaintiffs") filed a lawsuit, entitled *Dennis C. Payne and Susan Payne v. Triple A Machine Shop, Inc., et al.,* Case No. 21CV002305, in the Superior Court of California, County of Alameda, seeking damages for alleged personal injuries against defendants. A true and correct copy of Plaintiffs' Complaint ("Plaintiffs' Complaint") is attached hereto as **Exhibit 1**.

2. The Complaint alleges that Mr. Payne was exposed to asbestos and asbestos-containing products as a student of the Maritime Academy. **Exhibit 1**, at 27:2-15.

3. The Complaint alleges liability based on "Strict Liability-Design Defect/Manufacturing Defect/Failure to Warn-Maritime Law," "Strict Liability-Design Defect/Manufacturing Defect/Failure to Warn-California Law," "Negligence/Negligent Failure to Warn-Maritime Law," "Negligence/Negligent Failure to Warn-California Law," "False Representation Under Restatement of Torts Section 402-B," "Intentional Tort/Intentional Failure to Warn/Concealment," and "Loss of Consortium." **Exhibit 1**, at ¶¶ 14-81. The Complaint identifies TRIPLE A as a defendant as to all causes of action. **Exhibit 1**, generally.

4. In their Complaint, Plaintiffs identify federal rules and statutes supporting and justifying federal jurisdiction, namely F.R.C.P. 9(h) and 28 U.S.C. Section 1333. **Exhibit 1**, at ¶ 1.

5. This case is removable based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). Any claim that Plaintiffs have against TRIPLE A is based on Mr. Payne's alleged exposure to asbestos-containing products allegedly removed and/or installed by TRIPLE A pursuant to contracts with the United States of America-Department of Commerce-Maritime Administration was in its capacity as a government contractor. See i.e., **Exhibit 2**, generally.

6. To the extent that TRIPLE A performed work on the ship on which Plaintiff served or disturbed or installed equipment or materials in connection with that purported work, TRIPLE A's work was performed pursuant to contracts and specifications provided by the United States of America-Department of Commerce-Maritime Administration and under the direction and control of the government, its officers or agents. Accordingly, this case is removable on the grounds of federal officer removal jurisdiction pursuant to U.S.C. § 1442(a)(1).

6. This notice of removal is timely. The 30-day removal period prescribed by § 1446 (b)(3) begins to run after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. On December 28, 2021, Plaintiffs served their Complaint on Triple A. This Notice of Removal is timely under 28 U.S.C. § 1446 (b)(3).

*///*

## NATURE OF THE CASE

7.     The case is based on allegations that Mr. Payne developed an asbestos-related disease caused by exposure to asbestos and asbestos-containing products as a student of the Maritime Academy **Exhibit 1**, at 27:2-15.

8.     The allegations of exposure to asbestos with regard to TRIPLE A stem from work performed pursuant to contracts between the United States of America-Department of Commerce-Maritime Administration and Triple A Machine Shop, Inc. See **Exhibit 2**.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

9.     Jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set forth below under Grounds for Removal, *infra*.

10.     Venue is proper in the Northern District of California as the state court action, which is subject to this removal petition, was filed in the Superior Court of California for the County of Alameda where it is alleged that all parties named in Plaintiffs' Complaint are subject to personal jurisdiction.

11.     Furthermore, § 1442(a) authorizes such a removal without the consent of any other party. See *Ely Valley Mines, Inc. v. Hartford Acc. & Indemnity Co.*, 644 F.2d 1310, 1314-1315 (9th Cir. 1981) ("federal officer…can remove without other defendants joining the petition, and the entire case is removed to federal court.").

## GROUNDS FOR REMOVAL

12.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is removable to this Court by TRIPLE A pursuant to the provisions of 28 U.S.C. § 1442(a)(1) in that it is a civil action in which Plaintiffs' alleged right to relief necessarily depends on the resolution of a substantial question of federal law. "Federal officers, and their agents, may remove cases based on acts performed under the color of their federal office if they assert a colorable defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1147, 1251 (9th Cir. 2006); *Leite v. Crane Co.*, 749 F.3d 117 (9th Cir. 2014). "(T)he Supreme Court has mandated a generous interpretation of the federal officer removal statute…" and there is a "clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to

1   interpret section 1442 broadly in favor of removal." *Durham*, *supra*, 445 F.3d at 1252.

2       13.     To the extent that TRIPLE A may be held responsible for the alleged repair of the

3   ship on which Mr. Payne served during his time as a student at the California Maritime Academy, it

4   was acting at all times under the direction of an officer of the United States within the meaning of 28

5   U.S.C. § 1442(a)(1) in performing work for the United States of America-Department of Commerce-

6   Maritime Administration and its agents. Any such work was done under the supervision and control

7   of the United States of America-Department of Commerce-Maritime Administration in strict

8   accordance with precise specifications provided by the United States of America-Department of

9   Commerce-Maritime Administration and TRIPLE A has a colorable federal defense to Plaintiffs'

10  state tort claims.

11      14.     Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party

12  can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal

13  defense to Plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts

14  it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-125, 129-131, 134-

15  135 (1989). As was recognized by the United States District Court for the Eastern District of

16  Pennsylvania (the "home court" for Asbestos MDL), TRIPLE A may properly remove this case to

17  federal court if it establishes a "colorable" right to assert a "federal" defense to Plaintiffs' claims.

18  See *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770 (E.D.Pa. 2010). Here, TRIPLE A can satisfy

19  all three of the *Mesa* elements, as it has multiple defenses to this action; i.e. the "government

20  contractor" and "derivative sovereign immunity" defenses, anyone of which would provide absolute

21  immunity to TRIPLE A for liability arising from the injury caused to Mr. Payne by any exposure to

22  asbestos aboard a government owned vessel where TRIPLE A may have performed work. See *Boyle*

23  *v. United Technologies Corp.*, 487 U.S. 500, 108 S. Ct. 2510 (1998); *Yearsley v. W.A. Ross Constr.*

24  *Co.*, 309 U.S. 18, 20-21 (1940).

25      15.     At all relevant times, TRIPLE A was a "person" under the "federal officer" removal

26  statute. The definition of "person" under that statute includes a corporation. See *Isaacson, supra,* 304

27  F.Supp. at 446; see also *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 776 (E.D. Pa. 2010).

28  ///

16.     Should Plaintiffs file a motion to remand this case, TRIPLE A respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

17.     "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary state to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense." *Hagen*, 739 F.Supp.2d at 782. "It is the sufficiency of the facts stated – not the weight of the proof presented – that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's roe to impose judicially created tolls on those who seek to travel on it. Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in light most favorable to the defendant, would establish a complete defense at trial. *Id*. at 782-783. Here, TRIPLE A identifies facts that establish the government contractor and federal officer defenses and entitle it to remove the case.

(a)     Plaintiffs have sued TRIPLE A based on its work as a contractor and/or sub-contractor hired to perform installation, removal and/or repair on a U.S. government-owned ship. Repair contract work on U.S. government-owned ships is controlled and accomplished in accordance with contract specifications that provide the basis for government supervision and control over the work performed by contractors such as TRIPLE A. At all times, any and all work performed during the repair of U.S. government-owned vessels was performed to the requirements specified by the U.S. government, and that the work was reviewed and inspected by U.S. government personnel. At all times, a contractor such as TRIPLE A was acting under the direction of agents and officers of the U.S. government within the meaning of 28 U.S.C. § 1442 (a)(1) in performing construction and/or repair work on the U.S. government-owned vessel. By command authority, the U.S. government had direct and detailed control over every aspect of the work being done and the materials and equipment being used on the ship. *Id*. If work failed to conform to the detailed U.S. government specifications, the U.S. government officers or their agents could and would stop the work.

///

1  (b)   TRIPLE A raises colorable federal defenses to this action under government

2  contractor immunities in that the U.S. government specified, supervised and controlled work done by

3  contractors on U.S. government-owned vessels, including any ship on which Plaintiff served while

4  he was a student at the California Maritime Academy.

5  (c)   A causal nexus exists between Plaintiffs' claims in this action and the acts taken by

6  TRIPLE A under the direction of federal officers. Plaintiffs' claims against TRIPLE A arise solely

7  from Mr. Payne's alleged exposure to asbestos and asbestos-containing products on a U.S.

8  government-owned vessel. The actions or inactions of TRIPLE A are inseparable from the

9  government specifications, regulations and oversight and a clear causal nexus exists between

10  Plaintiffs' claims and the acts performed under color of federal office. See *Boyle*, 487 U.S. 500

11  (1998); *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cirl. 1996); *Marley v.*

12  *Elliott Turbomachinery Co., Inc.*, 545 F.Supp. 2d 1266, 1271 (S.D. Fla. 2008); *Arness v. Boeing*

13  *North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998); *Sundstrom v. McDonnell Douglas Corp.*,

14  816 F.Sup. 587 (N.D. Cal. 1993); *Crocker v. Borden*, 852 F.Supp. 1322 (E.D. La. 1994); *Fung v.*

15  *Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Pack v. ACandS, Inc.*, 838 F.Supp. 1009 (D. Md.

16  1993).

17  20.   Plaintiffs' claims against TRIPLE A are affirmatively barred by government

18  contractor immunity as set forth by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*,

19  487 U.S. 500 (1988) and by the Ninth Circuit Court of Appeals in *McKay v. Rockwell International*

20  *Corp.*, 704 F.2d 444 (9th Cir. 1983). Pursuant to this federal defense, contractors cannot be held

21  liable under state law for any injuries caused by the work performed on equipment supplied to the

22  U.S. when: (a) the United States approved reasonably precise specifications; (b) the equipment or

23  services conformed to these specifications; and (c) the government contractor warns the military

24  about any hazards involved in the equipment or services it was contracted to supply that are known

25  to the government contractor but not known to the military. See *Boyle*, 487 U.S. at 512; *McKay*,

26  *supra*, 704 F.2d. at 451. "The contractor's duty to warn under the third prong of Boyle extends only

27  to those dangers in the use of the equipment which are unknown to the government." *Sundstrom*, 816

28  F.Supp. at 590.

21.     Analyzing the *Boyle/McKay* factors with the facts above establishes that (a) TRIPLE A performed it works under strict government supervision and control and that the U.S. government approved reasonably precise specifications for the work done and the materials used, if any; and (b) the work done conformed to those specifications.

22.     TRIPLE A also has a colorable federal defense under *Yearsley v. W.A. Ross Construction Co*., 309 U.S. 18, 19 (1940), which extended immunity to a contractor performing a service contract with the government. See also *Ackerson v. Bean Dredging, LLC,* 559 F.3d 196 (5th Cir. 2009). Plaintiffs sue TRIPLE A not because it violated its contract with the United States of America-Department of Commerce-Maritime Administration, but because it followed that contract. Accordingly, the *Yearsley* contractor liability defense would apply to provide immunity to TRIPLE A for any alleged work it performed on the U.S. government-owned ship in Mr. Payne's presence while he was a student at the California Maritime Academy.

23.     The existence of a single removable claim allows removal of the entire action. 28 U.S.C. § 1441(c); *National Audubon Society v. Dept. of Water*, 496 F.Supp. 499, 509 (E.D. Cal. 1980).

24.     Notice of this removal has been, or will be, filed with the state court and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

## **CONCLUSION**

25.     Removal of this action is proper under 28 U.S.C. § 1442: it is a civil action brought in a state court and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442(a)(1) because TRIPLE A has colorable absolute defenses to the Complaint under federal law and because federal law preempts state court jurisdiction, including under the government contractor defenses.

26.     This removal is based on this Notice of Removal to the United States District Court, the Certificate of Service of Notice to Adverse Party of Removal filed in the state court action, the Notice to Party of Removal to Federal Court filed in the state court action, the complete file in the state court case and any other matters which the court deems applicable.

*///*

THEREFORE, Defendant TRIPLE A MACHINE SHOP, INC. pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, removes this action for trial from the Superior Court of the State of California, County of Alameda, on January 27, 2022.

.

DATED:  January 27, 2022                    **HAWKINS PARNELL & YOUNG LLP**

By: _____
Christine L. Hawkins
Randall K. Bernard
Attorneys for Defendant
**TRIPLE A MACHINE SHOP, INC.**

# EXHIBIT "1"



FILE BY FAX

1 SCOTT L. FROST, ESQ., CA Bar No. 258063
scott@frostlawfirm.com
2 ANDREW SEITZ, ESQ., CA Bar No. 273165
andrew@frostlawfirm.com
3 FROST LAW FIRM, PC
273 West 7th Street
4 San Pedro, CA 90731
5 Tel.: (866) FLF-MESO
Fax: (833) FLF-MESO
6
7 and

JOHN M. CARON, ESQ., CA Bar No. 130633
8 THE LAW OFFICES OF WORTHINGTON & CARON, PC
273 W. 7th Street
9 San Pedro, CA 90731
Tel.:(310) 221-8090
10 Fax: (310) 221-8095

11 **Attorneys for Plaintiffs**

ENDORSED
FILED
ALAMEDA COUNTY

NOV 1 0 2021

CLERK OF THE SUPERIOR COURT
By _____ SUE PESKO
Deputy

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                      FOR THE COUNTY OF ALAMEDA

14

15 DENNIS C. PAYNE and SUSAN PAYNE,        Case No. 2|CVC002305

16                                         **COMPLAINT FOR PERSONAL INJURY
                   Plaintiffs,            – ASBESTOS (STRICT LIABILITY –
17        vs.                              MARITIME LAW; STRICT LIABILITY –
                                           CALIFORNIA LAW; NEGLIGENCE –
18 TRIPLE A MACHINE SHOP, INC.;            MARITIME LAW; NEGLIGENCE –
and DOES 1 THROUGH 400 INCLUSIVE,          CALIFORNIA LAW; FALSE
19 et al.                                  REPRESENTATION; INTENTIONAL
                                           TORT/INTENTIONAL FAILURE TO
20                 Defendants.             WARN; LOSS OF CONSORTIUM)**
21

22              <u>GENERAL ALLEGATIONS – ALL DEFENDANTS</u>

23        COME NOW Plaintiffs **DENNIS C. PAYNE** and **SUSAN PAYNE** (hereinafter "Plaintiffs") and

24 complains and alleges as follows:

25        1.    A portion of this case is a case of Admiralty and Maritime Jurisdiction and is a claim

26 within the meaning of F.R.C.P. 9(h). The locations of Plaintiff **PATRICK W. DENNIS**'s exposure

27 relevant to Defendant **TRIPLE A MACHINE SHOP, INC.** were on navigable waters, and his exposure

28 occurred in connection with traditional maritime activity, as specified in "Exhibit A." The "saving to

                                           1

suitors" clause of 28 U.S.C. Section 1333 allows Plaintiffs to pursue State claims in addition to Plaintiffs' maritime claims.

2.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 400, inclusive, are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

3.     At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venturer of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, **TRIPLE A MACHINE SHOP, INC.**; and DOES 1-400 INCLUSIVE were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of Alameda, State of California.

4.     At all times herein mentioned, each of the named Defendants and DOES 1 through 400 was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in, an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named

Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing said asbestos. The Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

## FIRST CAUSE OF ACTION

**(Strict Liability – Design Defect / Manufacturing Defect / Failure to Warn – Maritime Law)**

PLAINTIFFS COMPLAIN OF TRIPLE A MACHINE SHOP, INC. AND DOES 1-200, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT LIABILITY UNDER MARITIME LAW AND ALLEGE AS FOLLOWS:

5.     At all times herein mentioned, Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended.

6.     Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without

1 │ inspection for defects therein or in any of their component parts and without knowledge of the hazards
2 │ involved in such use.

3 │      7.    Said asbestos and asbestos-containing products were defective and unsafe for their
4 │ intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect
5 │ existed in the said asbestos and asbestos-containing products at the time they left the possession of the
6 │ Defendants, their "alternate entities," and each of them. Said asbestos and asbestos-containing products
7 │ did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to users,
8 │ consumers, workers, bystanders, and others, including the exposed Plaintiff herein (hereinafter
9 │ collectively called "exposed persons"), while being used in a reasonably foreseeable manner, thereby
10 │ rendering the same defective, unsafe, and dangerous for use.

11 │      8.    At all times mentioned herein, the above-referenced asbestos and asbestos-containing
12 │ products failed to perform as safely as an ordinary consumer and/or other "exposed persons" would
13 │ expect when used in an intended or reasonably foreseeable manner, and/or the risk of danger inherent in
14 │ this substance and products outweighed the benefits of said substance and products.

15 │      9.    At all times mentioned herein, the foreseeable use of said asbestos and asbestos-
16 │ containing products involved a substantial danger not readily recognizable to an ordinary user, consumer,
17 │ or bystander, or other "exposed persons," but which danger was known or knowable to Defendants, and
18 │ Defendants failed to adequately warn of the substantial danger.

19 │     10.   "Exposed persons" did not know of the substantial danger of using said products. Said
20 │ dangers were not readily recognizable by "exposed persons." Said Defendants, their "alternate entities,"
21 │ and each of them, further failed to adequately warn of the risks to which Plaintiff DENNIS C. PAYNE
22 │ and others similarly situated were exposed.

23 │     11.   Defendants, their "alternate entities," and each of them, knew, or should have known, and
24 │ intended that the aforementioned asbestos and asbestos-containing products and equipment would be
25 │ used or handled as specified in Exhibit "A", which is attached hereto and incorporated by reference
26 │ herein, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or
27 │ handling "exposed persons," including Plaintiff herein, would be in proximity to and exposed to said
28 │ asbestos fibers.

12. Plaintiff DENNIS C. PAYNE has used, handled, or otherwise been exposed to asbestos and asbestos-containing products and equipment referred to herein in a manner that was reasonably foreseeable. Plaintiff DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

13. As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Plaintiff DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Plaintiff, the nature of which, along with the date of Plaintiff DENNIS C. PAYNE's diagnosis and the date he learned such injuries were attributable to exposure to asbestos and/or asbestos-containing products, are set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

14. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

15. Plaintiff DENNIS C. PAYNE suffers from malignant mesothelioma, caused by an exposure to asbestos and asbestos-containing products and equipment. Plaintiff DENNIS C. PAYNE was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

16. As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Plaintiff DENNIS C. PAYNE has suffered, and continues to suffer permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in a sum in excess of the jurisdictional limit of a limited civil case.

17. As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities," and each of them, Plaintiff DENNIS C. PAYNE has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices,

1    X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this
2    time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof
3    is ascertained.

4         18.     As a further direct and proximate result of the said conduct of the Defendants, their
5    "alternate entities," Plaintiff has incurred, and will incur, loss of income, wages, profits and commissions,
6    a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are
7    not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time
8    of trial.

9         19.     In researching, manufacturing, fabricating, designing, modifying, testing, or failing to
10   test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale,
11   supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing,
12   warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-
13   containing products and equipment, Defendants, their "alternate entities," and each of them, did so with
14   conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and
15   asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer.
16   Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the
17   assistance of said Defendants, their "alternate entities," and each of them, on or before 1930, and
18   thereafter.

19        20.     On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of
20   them, were aware that members of the general public and other "exposed persons", who would come in
21   contact with their asbestos and asbestos-containing products, had no knowledge or information indicating
22   that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate
23   entities," and each of them, knew that members of the general public, and other "exposed persons", who
24   came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume,
25   that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was
26   extremely hazardous to health and human life.

27        21.     With said knowledge, said Defendants, their "alternate entities, and each of them, opted
28   to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale,

supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public, that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

22.     The above-referenced conduct of said Defendants, their "alternate entities," and each of them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing produces. In pursuance of said financial motivation, Defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff DENNIS C. PAYNE.

23.     Defendants, their "alternate entities," and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each Defendants' officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and

had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

25.    The herein-described conduct of said Defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

26.    Plaintiff alleges that the aforementioned Defendants, their "alternate entities," and each of them, impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to Plaintiff DENNIS C. PAYNE.

27.    Plaintiff further alleges that Plaintiff DENNIS C. PAYNE's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned Defendants, their "alternate entities," and each of them, all of which were a substantial contributing factor to Plaintiff's development of the asbestos disease complained of herein.

28.    Plaintiff DENNIS C. PAYNE relied upon Defendants, their "alternate entities," and each of their representations, lack of warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Plaintiff has been injured permanently as alleged herein.

29.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiff DENNIS C. PAYNE has suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities," and each of them, as hereinafter set forth.

///

///

## SECOND CAUSE OF ACTION

**(Strict Liability – Design Defect / Manufacturing Defect / Failure to Warn – California Law)**

AS AND FOR A SECOND, SEPARATE, FURTHER, AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY UNDER CALIFORNIA LAW, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

30.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First Cause of Action herein.

31.     At all times herein mentioned, Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended.

32.     Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

33.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said asbestos and asbestos-containing products at the time they left the possession of the Defendants, their "alternate entities," and each of them. Said asbestos and asbestos-containing products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to users, consumers, workers, bystanders, and others, including the exposed Plaintiff herein (hereinafter collectively called "exposed persons"), while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

34. At all times mentioned herein, the above-referenced asbestos and asbestos-containing products failed to perform as safely as an ordinary consumer and/or other "exposed persons" would expect when used in an intended or reasonably foreseeable manner, and/or the risk of danger inherent in this substance and products outweighed the benefits of said substance and products.

35. At all times mentioned herein, the foreseeable use of said asbestos and asbestos-containing products involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, or other "exposed persons," but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

36. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said Defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which Plaintiff DENNIS C. PAYNE and others similarly situated were exposed.

37. Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products and equipment would be used or handled as specified in Exhibit "A", which is attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Plaintiff herein, would be in proximity to and exposed to said asbestos fibers.

38. Plaintiff DENNIS C. PAYNE has used, handled, or otherwise been exposed to asbestos and asbestos-containing products and equipment referred to herein in a manner that was reasonably foreseeable. Plaintiff DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

39. As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Plaintiff DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Plaintiff, the nature of which, along with the date of Plaintiff DENNIS C. PAYNE's diagnosis and the date he learned such injuries

were attributable to exposure to asbestos and/or asbestos-containing products, are set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

40.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

41.     Plaintiff DENNIS C. PAYNE suffers from malignant mesothelioma, caused by an exposure to asbestos and asbestos-containing products and equipment. Plaintiff DENNIS C. PAYNE was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

42.     As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Plaintiff DENNIS C. PAYNE has suffered, and continues to suffer permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in a sum in excess of the jurisdictional limit of a limited civil case.

43.     As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities," and each of them, Plaintiff DENNIS C. PAYNE has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

44.     As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities," Plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

45.     In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of said Defendants, their "alternate entities," and each of them, on or before 1930, and thereafter.

46.     On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate entities," and each of them, knew that members of the general public, and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

47.     With said knowledge, said Defendants, their "alternate entities, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and

members of the general public, thus impliedly representing to "exposed persons" and members of the general public, that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

48.     The above-referenced conduct of said Defendants, their "alternate entities," and each of them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing produces. In pursuance of said financial motivation, Defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff DENNIS C. PAYNE.

49.     Defendants, their "alternate entities," and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

50.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each Defendants' officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

51.     The herein-described conduct of said Defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

52.     Plaintiff alleges that the aforementioned Defendants, their "alternate entities," and each of them, impliedly warranted their asbestos and asbestos-containing products and equipment to be safe

for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to Plaintiff DENNIS C. PAYNE.

53.     Plaintiff further alleges that Plaintiff DENNIS C. PAYNE's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned Defendants, their "alternate entities," and each of them, all of which were a substantial contributing factor to Plaintiff's development of the asbestos disease complained of herein.

54.     Plaintiff DENNIS C. PAYNE relied upon Defendants, their "alternate entities," and each of their representations, lack of warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Plaintiff has been injured permanently as alleged herein.

55.     As a direct and proximate result of the actions and conduct outlined herein, Plaintiff DENNIS C. PAYNE has suffered the injuries and damages alleged herein

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities," and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Negligence / Negligent Failure to Warn – Maritime Law)

AS AND FOR A THIRD, SEPARATE, FURTHER, AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE UNDER MARITIME LAW, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-200, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

56.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First and Second Causes of Action herein.

57.     At all times herein mentioned, Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed,

14

modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended, in that said substance proximately caused personal injuries to "exposed persons," while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons."

58.     Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

59.     Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Plaintiff herein, would use or be in proximity of and exposed to said asbestos fibers.

60.     As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs have suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

///

///

COMPLAINT FOR PERSONAL INJURY; DEMAND FOR JURY TRIAL - ASBESTOS

## FOURTH CAUSE OF ACTION

### (Negligence / Negligent Failure to Warn – California Law)

AS AND FOR A FOURTH, SEPARATE, FURTHER, AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE UNDER CALIFORNIA LAW, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

61.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First, Second, and Third Causes of Action herein.

62.     At all times herein mentioned, Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended, in that said substance proximately caused personal injuries to "exposed persons," while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons."

63.     Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

64.     Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other

16

manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Plaintiff herein, would use or be in proximity of and exposed to said asbestos fibers.

65.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs have suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities," and each of them, as hereinafter set forth.

### FIFTH CAUSE OF ACTION

### (False Representation Under Restatement of Torts Section 402-B)

AS AND FOR A FURTHER FIFTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

66.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First, Second, Third, and Fourth Causes of Action.

67.    At the aforementioned time when Defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons", including, without limitation, Plaintiff DENNIS C. PAYNE and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

68.    The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons" including, without limitation, Plaintiff DENNIS C. PAYNE, and his employers, relied

1   upon said representations of Defendants, their "alternate entities," and each of them, in the selection,

2   purchase, and use of asbestos and asbestos-containing products.

3        69.    Said representation by Defendants, their "alternate entities," and each of them, were false

4   and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-

5   containing products and equipment were not safe for their intended use, nor were they of merchantable

6   quality as represented by Defendants, their "alternate entities," and each of them, in that asbestos and

7   asbestos-containing products and equipment have very dangerous properties and defects whereby said

8   products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and

9   damage to the users of said products and other "exposed persons," thereby threatening the health and life

10   of said persons, including Plaintiff DENNIS C. PAYNE herein.

11        70.    As a direct and proximate result of said false representations by Defendants, their

12   "alternate entities," and each of them, Plaintiffs sustained the injuries and damages alleged herein.

13        WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and

14   each of them, as hereinafter set forth.

15

16                      **SIXTH CAUSE OF ACTION**

17           **(Intentional Tort/Intentional Failure to Warn/Concealment)**

18        AS AND FOR A FURTHER SIXTH, SEPARATE, AND DISTINCT CAUSE OF ACTION

19        FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710,

20   PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES,"

21             AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

22        71.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every

23   allegation contained in the First, Second, Third, Fourth and Fifth Causes of Action herein, excepting

24   there from allegations pertaining to negligence.

25        72.    At all times pertinent hereto, the Defendants, their "alternate entities," and each of them,

26   owed Plaintiff a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of

27   California, to abstain from injuring the person, property, or rights of the Plaintiff. When a duty to act was

28   imposed, as set forth herein, the Defendants, their "alternate entities," and each of them, did do the acts

and omissions in violation of that duty, thereby causing injury to the Plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of the Plaintiff as provided for in the aforementioned Civil Code sections.

73.     Since on or before 1930, the Defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiff's First Cause of Action were and are hazardous to the health and safety of Plaintiff, and others in Plaintiff DENNIS C. PAYNE's position working in close proximity with such materials. The Defendants, their "alternate entities," and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiff DENNIS C. PAYNE, and others in Plaintiff's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)     Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities," and each of them, since on or before 1930. By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities," and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff DENNIS C. PAYNE to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)     Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "alternate entities," and each of them, were bound to disclose such information;

(c)     Defendants, their "alternate entities," and each of them, sold the aforementioned products, materials, and equipment to Plaintiff DENNIS C. PAYNE's employers, the employers of Plaintiff, and others without advising Plaintiff DENNIS C. PAYNE, his employers, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities," and each of them, caused to be positively asserted to Plaintiff DENNIS C. PAYNE that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff DENNIS C. PAYNE to work in close proximity to such materials;

(d)     Defendants, their "alternate entities," and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities," and each of them, influenced A.J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade Journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)     Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry organizations which, for and on behalf of Defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff DENNIS C. PAYNE by the suggestions and deceptions set

forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff DENNIS C. PAYNE the true facts concerning such knowledge of danger, which Defendants, their "alternate entities," and each of them, were bound to disclose;

(g)     Defendants, their "alternate entities," and each of them, failed to warn Plaintiff DENNIS C. PAYNE, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact, that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their "alternate entities," and each of them, failed to provide Plaintiff DENNIS C. PAYNE with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities," and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff DENNIS C. PAYNE and others applying and installing such material;

(i)    Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from Plaintiff DENNIS C. PAYNE the true nature of the industrial exposure of Plaintiff DENNIS C. PAYNE and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from Plaintiff DENNIS C. PAYNE and others that harmful materials to which they were exposed would cause to pathological effects without noticeable trauma;

(j)    Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff DENNIS C. PAYNE so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k)    Defendants, their "alternate entities," and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiff DENNIS C. PAYNE's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff DENNIS C. PAYNE and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

74.    Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiff's injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff DENNIS C. PAYNE was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected there by if the fact of danger from products complained of had become known.

75.    Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duty to inform Plaintiff DENNIS C. PAYNE about the true facts, and knowing the Plaintiff DENNIS C. PAYNE did not possess such knowledge and would breathe such material

innocently, acted falsely and fraudulently and with full intent to cause Plaintiff DENNIS C. PAYNE to remain unaware of the true facts and to induce Plaintiff DENNIS C. PAYNE to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the <u>Civil Code of the State of California</u>.

76.     As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities," and each of them, Plaintiff DENNIS C. PAYNE sustained the injuries and damages alleged herein. The herein-described conduct of said Defendants, their "alternate entities," and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

### SEVENTH CAUSE OF ACTION

#### (Loss of Consortium)

AS AND FOR A FURTHER SEVENTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF SUSAN PAYNE COMPLAINS OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

77.     Plaintiff SUSAN PAYNE hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First through Sixth Causes of Action herein.

78.     Plaintiffs DENNIS C. PAYNE and SUSAN PAYNE were married on November 27, 1976, and up to and including the current date have been husband and wife.

79.     Prior to Plaintiff DENNIS C. PAYNE's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Plaintiff DENNIS C. PAYNE was unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service, and duties in the future. As a proximate result thereof, Plaintiff SUSAN

23

1  PAYNE has been permanently deprived and will be deprived of the consortium of her spouse, including

2  the performance of duties, all to her damages, in an amount presently unknown but which will be proved

3  at the time of trial.

4       80.    Plaintiff SUSAN PAYNE's discovery of this cause of her loss of consortium, as herein

5  alleged, first occurred within one year of the date this Complaint was filed.

6       81.    As a direct and proximate result of the acts of Defendants, their "alternate entities," and

7  each of them, and the severe injuries caused thereby to Plaintiff DENNIS C. PAYNE, as set forth in this

8  complaint, Plaintiff SUSAN PAYNE has suffered, and for a long period of time will continue to suffer,

9  loss of consortium, including, but not limited to, loss of services, marital relations, society, comfort,

10  companionship, love and affection of said spouse, and has suffered severe mental and emotional distress

11  and general nervousness as a result thereof.

12       WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities," and

13  each of them, as is hereinafter set forth.

14

15       ### PRAYER FOR RELIEF - ALL DEFENDANTS / ALL CAUSES OF ACTION

16       WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and

17  each of them, in an amount to be proved at trial in each individual case, as follows:

18       1.    For Plaintiffs' general damages according to proof;

19       2.    For Plaintiffs' loss of income, wages, and earning potential according to proof;

20       3.    For Plaintiffs' medical and related expenses according to proof;

21       4.    For Plaintiffs' cost of the suit herein;

22       5.    For Plaintiff SUSAN PAYNE's damages for loss of love, companionship, comfort,

23  affection, solace, moral support, and/or society according to proof.

24       6.    For exemplary or punitive damages according to proof.

25       7.    For damages for fraud according to proof; and

26  ///

27  ///

28  ///

1        8.    For such other and further relief as the Court may deem just and proper, including costs

2  and prejudgment interest as provided in C.C.P. section 998, section 1032, and related provisions of law.

3

4  DATED: October 20, 2021                          FROST LAW FIRM, PC

5

6                                By: _____
                                  ANDREW SEITZ

7                                    Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY; DEMAND FOR JURY TRIAL - ASBESTOS

## DEMAND FOR JURY TRIAL

Plaintiffs also by this pleading demand a jury trial on all issues set forth hereinabove and as shall or might arise pursuant to the same.

DATED: October 20, 2021                        FROST LAW FIRM, PC

                                               By: _____
                                               ANDREW SEITZ
                                               Attorneys for Plaintiffs

EXHIBIT "A"

Plaintiff DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products occurred at various locations within the state of California and around the world, including, but not limited to:

| Location of Exposures | Job Title | Exposure Dates (Approximate) |
|---|---|---|
| T.S. Golden Bear II (formerly USS Crescent City) California State University Maritime Academy Vallejo, California Long Beach Naval Shipyard Los Angeles, California Various ports around the Pacific Ocean and Caribbean Sea | Maritime Academy student | August 1972 to Summer of 1975 |

EXHIBIT "B"

1

2      Plaintiff DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products caused

3 severe and permanent injury to the Plaintiff including, but not limited to, breathing difficulties,

4 asbestosis, mesothelioma, lung and/or other cancer, and/or lung damage. Plaintiff DENNIS C. PAYNE

5 was diagnosed with malignant mesothelioma on or about December 2019.

6      Plaintiff DENNIS C. PAYNE was not retired at the time he was diagnosed with malignant

7 mesothelioma.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY; DEMAND FOR JURY TRIAL - ASBESTOS

# EXHIBIT "2"

Form MA-346
(4-3-57)

MARITIME ADMINISTRATION
SAN FRANCISCO, CALIFORNIA

INVITATION FOR BIDS FOR REPAIRS, RENEWALS,
ALTERATIONS AND ADDITIONS

Vessel___T. S. GOLDEN BEAR___Type___C-3___Official No.___239-932___Date_10/4/72_

    Gross tons registered_7987_____Port___- - - -_____

    Net tons registered___4555_____Voyage No._1973 Cruise_____

                            - - - - - -
                        (General Agent)

    The "UNITED STATES OF AMERICA", (hereinafter called the "UNITED STATES") acting by and through the Department of Commerce, Maritime Administration, hereinafter called the "Administration", hereby invites sealed Bids for repairs, renewals, alterations and additions to the above vessel in accordance with the attached plans, if any, and specifications.

    Invitations for Bids are limited to contractors who hold Master Repair Contracts with the Administration, in the Contract Form MARAD-LUMPSUMREP.

                        PARTICULARS

1.  The above vessel is now available for examination by bidders at the following location:

        CALIFORNIA MARITIME ACADEMY, Vallejo, California_____

2.  Work covered by the attached specifications dated_Oct. 4,1972__consisting of__35__
                                    Plus Sketches
    pages, Items 1 to__17____inclusive,/is to complete in__twenty-one (21) working days_

    from date of availability of vessel, on or about___P.M. October 11, 1972,___to the

    successful bidder and is to be performed at___Vallejo, California_____.

    (Contractor to designate location for performance of work).

3.  Bids are to be forwarded as directed herein and must be received not later than__

    10:00 AM October 11, 1972, at the office of the Region SM Officer,     Maritime
    Administration, 450 Golden Gate Ave., San Francisco, California, at which time and place all bids shall be opened publicly. No bid will be accepted which fixed the time of completion after:

                        2400 November 10, 1972_____

4.  The per day amount of liquidated damages provided for in Article No. 18 of the

    MARAD-LUMPSUMREP Contract shall be $1,000.00_____.

5.  Bids must be enclosed in a sealed envelope, marked:  Bids for Performing Repairs, Renewals, Alterations and Additions to Vessel.  This envelope must be enclosed in another addressed to: Region Ship Mgt.Officer, Maritime Administration, 450 Golden Gate Avenue, Bid Room 15444, San Francisco, California.

6.  The Davis-Bacon Act      - does not apply.

7.  Recapture of excess profits provisions of Article 41, Addendum No. 3 of MARAD-LUMPSUMREP Contract      - does not apply.

8.  The following factors will be considered by the Region Ship Management Office, Maritime Administration, in determining the successful bidder:

    TOWING DIFFERENTIAL (does - does not apply).  Strike out inapplicable word(s).

Note:  The attached amended provisions for Articles 20, 21, 24, 25a, 25b, 25c, 27 and 34 will become a part of the resultant job order issued to successful bidders under this invitation and replace those in the current contract.

INSTRUCTIONS TO BIDDERS

1. Bidders should carefully examine this Invitation for Bids, the terms and conditions of the respective Master Repair Contract and the plans, if any, and the specifications attached to this Invitation for Bids before submitting their bids. The bidders also should take such other steps as may be necessary to satisfy themselves concerning the nature and the extent of the work to be performed, as described in said plans and specifications and should decide for themselves as to any other circumstances affecting the cost of the work and the contractor's responsibility under its respective Master Repair Contract. No adjustment in price will be made for the failure of a bidder to whom the award is made to estimate correctly the quantity of work herein called for or the difficulties of performing such work.

2. The total price for the work covered by this Invitation for Bids must be stated in the bidder's tender and must be written in words and also in figures. Itemized prices are to be furnished by the successful bidder, as a support to its final invoice, covering the original bid specifications and all supplementals thereto.

3. (a) A bidder's tender shall be subject to all of the terms and conditions of the bidder's Master Repair Contract, the provisions of this Invitation for Bids and the plans, if any, and specifications attached to this Invitation for Bids. All bids shall be in the following form:

"Pursuant to the Invitation for Bids dated_____for work to be performed on the SS_____, the Repair Contract and Specifications and plans, if any, attached thereto, the undersigned offers faithfully to perform all work at_____, covered thereby in conformance with the terms of the Master Lump Sum Repair Contract all for the sum of_____Dollars ($_____) and to complete such work on or before_____."

(b) In the event a bidder's tender exceeds $25,000 it must contain the statement required by Article No. 1, Paragraph (d) of the MARAD-LUMPSUMREP Contract.

(c) Bidder shall incorporate in his Tender an indication of the number of posters, "Equal Economic Opportunity," that he requires for posting (unless already posted) in his employment office and on principal bulletin boards.

4. No bid submitted in excess of $2,000 will be considered for award unless bid is accompanied by Performance and Payment bonds, in duplicate, in form and amount satisfactory to the Administration, or the bidder has on file with the Administration, Administration-approved annual Performance and Payment bonds. Bid bonds are not required. NO PAYMENT (PROGRESS OR FINAL) SHALL BE MADE TO THE CONTRACTOR UNTIL SUCH TIME AS THE REQUIRED PERFORMANCE AND PAYMENT BONDS SHALL HAVE BEEN APPROVED.

5. Bids can be withdrawn only by written or telegraphic request received prior to the time fixed for opening such bids. Negligence on the part of a bidder in preparing a bid confers no right for withdrawal of any bid after it has been opened.

6. The Administration reserves the right to reject any or all bids and call for new bids, to waive any irregularity in bid, and to make such award as it may deem most advantageous. The Administration also reserves the right to reject the bid of a bidder who has previously failed to make satisfactory progress or complete on time similar work for the Government or other persons, or who is shown not to be in a position to perform the contract work satisfactorily.

7. The successful bidder shall store all equipment, scrap, and/or salvageable material removed from the vessel in the performance of repairs which shall remain the property of the United States and shall be placed in the repair yard and segregated in such a manner as to be readily identifiable. Attention of the successful bidder is specifically directed to Article 8(c) of his MARAD-LUMPSUMREP Contract which outlines the procedure the Maritime Administration will employ in disposing of scrap and/or salvage in connection with repairs to this vessel. It shall be understood, of course, that the amount of scrap and the price thereof, will not be reflected in the bids, but will be settled after completion of all repairs.

8. The need for progress payment will not be treated as a handicap in awarding a contract.

GENERAL NOTES

(a) Contractor to make all removals and all replacements and to furnish all necessary labor, material and/or equipment required to complete items of work unless otherwise specifically directed.

(b) Bid price is to be considered as covering all incidental expenses such as rental of piers, berths for performance of the work, handling lines (to include men to secure vessel on arrival at contractor's plant and release same on departure), rigging fire and fresh water hose lines, furnishing steam heat, making shore power connection to ship's circuits, furnishing lights, power, protective services, garbage removal, gangways, etc. With respect to this last feature, the contractors must furnish railed gangways for access to vessel.

LEIGH G. MILLER
Region Ship Management Officer

## Notice of Requirement for Certification of Nonsegregated Facilities

Bidders and offerors are cautioned as follows: By signing this bid or offer, the bidder or offeror will be deemed to have signed and agreed to the provisions of the "Certification of Nonsegregated Facilities" in this solicitation. The certification provides that the bidder or offeror does not maintain or provide for his employees facilities which are segregated on a basis of race, creed, color, or national origin, whether such facilities are segregated by directive or on a de facto basis. The certification also provides that he will not maintain such segregated facilities. Failure of a bidder or offeror to agree to the Certification of Nonsegregated Facilities will render his bid or offer non responsive to the terms of solicitation involving awards of contracts exceeding $10,000 which are not exempt from the provisions of the Equal Opportunity Clause.

## Certification of Nonsegregated Facilities

By the submission of this bid, the bidder or subcontractor certifies that he does not maintain or provide for his employees any segregated facilities at any of his establishments, and that he does not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained. He certifies further that he will not maintain or provide for his employees any segregated facilities at any of his establishments, and that he will not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained. The bidder, offeror or subcontractor agrees that a breach of this certification is a violation of the Equal Opportunity Clause in this contract. As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color, or national origin, because of habit, local custom, or otherwise. He further agrees that (except where he has obtained identical certifications from proposed subcontractors for specific time periods) he will obtain identical certifications from proposed subcontractors prior to the award of subcontracts exceeding $10,000 which are not exempt from the provisions of the Equal Opportunity Clause; that he will forward the following notice to such proposed subcontractors (except where the proposed subcontractors have submitted identical certifications for specific time periods).

## Notice to Prospective Subcontractors of Requirements for Certifications of Nonsegregated Facilities

A certification of Nonsegregated Facilities, as required by the May 9, 1967 order (32 F. R. 7439, May 19, 1967) on Elimination of Segregated Facilities, by the Secretary of Labor, must be submitted prior to the award of a subcontract exceeding $10,000 which is not exempt from the provisions of the Equal Opportunity Clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semiannually, or annually).

NOTE: The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.

USCOMM-MA-SF

ARTICLE 20.   PROHIBITION AGAINST EMPLOYMENT OF CERTAIN PERSONS
              AND AGAINST DISCRIMINATION IN EMPLOYMENT

(a)  In connection with the performance of work under this contract, the Contractor agrees that the Contractor will not employ any person who advocates or who is a member of an organization that advocates the overthrow of the United States Government by force or violence to perform any part of the work under any job order under this contract, and as a condition to the employment of any person for the performance of such work, the Contractor shall, if the Administration so directs, require such person to execute and file an affidavit in such form as to satisfy the requirements of Section 4 of Public Law No. 23 (77th Congress) approved March 21, 1941, but the execution and filing of such affidavit in such form as to satisfy the requirements of such Section 4 shall be without prejudice to the right of the Administration to require such further evidence in the premises as it may deem desirable.

(b)  During the performance of any job order under this contract, the Contractor agrees as follows:

"(i)  The Contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin.  The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin.  Such action shall include, but not be limited to, the following:  employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.  The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Administration setting forth the provisions of this nondiscrimination paragraph."

"(ii)  The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin."

"(iii)  The Contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the Administration, advising the labor union or worker's representative of the Contractor's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment."

"(iv)  The Contractor will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor."

"(v)  The Contractor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the Administration and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders."

"(vi)  In the event of the Contractor's noncompliance with the non-discrimination article of this Article 20 or with any of such rules, regulations, or orders, this contract and the job order work may be cancelled, terminated or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, and such other sanctions may be imposed and remedies involved as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulations, or order of the Secretary of Labor, or as otherwise provided by law."

"(vii)  The Contractor will include the provisions of subparagraphs (i) through (vii) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor.  The Contractor will take such action with respect to any subcontract or purchase order as the Adminis-tration may direct as a means of enforcing such provisions including sanctions for noncompliance: <u>Provided</u>, <u>however</u>, That in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the Administration, the Contractor may request the United States to enter into such litigation to protect the interests of the United States."

ARTICLE 21.  <u>WORK HOURS ACT OF 1962 - OVERTIME COMPENSATION</u>

(a)  This contract, and any job order hereunder, to the extent that it is of a character specified in the Work Hours Act of 1962 (Public Law 87-581, 76 Stat. 357-360) is subject to the following provisions and to all other provisions and exceptions of said Work Hours Act of 1962.

(b)  No Contractor or subcontractor contracting for any part of the work under this contract or job order thereunder shall require or permit any laborer or mechanic to be employed on such work in excess of eight hours in any calendar day or in excess of forty hours in any work week unless such laborer or mechanic receives compensation at a rate not less than one and one-half times his basic rate of pay for all hours worked in excess of eight hours in any calendar day or in excess of forty hours in such work week, whichever is the greater number of overtime hours.

(c)  In the event of any violation of the provisions of paragraph (b), the Contractor or any subcontractor responsible for such violation shall be liable to any affected employee for his unpaid wages.  In addition, such Contractor or subcontractor shall be liable to the United States for liquidated damages.

Such liquidated damages shall be computed, with respect to each individual laborer or mechanic employed in violation of the provisions of paragraph (b), in the sum of $10 for each calendar day on which such employee was required or permitted to work in excess of eight hours or in excess of forty hours, in a work week without payment of the required overtime wages.

(d)  The Administration may withhold, or cause to be withheld, from moneys payable on account of work performed by the Contractor or subcontractor, the full amount of wages required by this contract and such sums as may

administratively be determined to be necessary to satisfy any liabilities of the Contractor or such subcontractor for liquidated damages as provided in paragraph (c).

ARTICLE 24.   DAVIS-BACON AND ANTI-KICKBACK ACTS

(a)  In the event that the work covered by a job order in excess of Two Thousand Dollars ($2000) is subject to the Davis-Bacon Act (40 U.S.C. 276a7), then, to the extent required by law, the following provisions shall prevail:

(i)  All mechanics and laborers employed or working directly upon the site of the job order work will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by the Copeland Act (Anti-kickback) Regulations (29 C.F.R. Part 3), the full amounts due at time of payment computed at wage /rates not less than those contained in the wage determination decision of the Secretary of Labor (which wage rates and changes therein will be furnished to the Contractor by the Administration) regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics; and a copy of the wage determination decision shall be posted by the Contractor at the site of the work in a prominent place where it can be easily seen by the workers.

(ii)  In the event it is found by the Administration that any laborer or mechanic employed by the Contractor or any subcontractor directly on the site of the job order work has been or is being paid at a rate of wages less than the rate required by subparagraph (i) of paragraph (a) of this Article 24, the Administration may (1) by written notice to the Contractor terminate his right to proceed with the job order work, or such part of the work as to which there has been a failure to pay said required wages, and (2) prosecute the work to completion by contract or otherwise, whereupon the Contractor and his sureties shall be liable to the Administration for any excess costs occasioned the Government thereby.

(iii)  Subparagraphs (i) and (ii) shall apply to a job order subject to the Davis-Bacon Act or to subcontracts under such job order.

(b)  This contract and any job order thereunder is subject to the regulations of the Secretary of Labor applicable to Contractors and subcontractors (29 C.F.R. Part 3), made pursuant to the Copeland Act, as amended (40 U.S.C. 276c) and to aid in the enforcement of the Anti-Kickback Act (18 U.S.C. 874) are made a part of this contract and any job orders thereunder by reference. The Contractor will comply with these regulations and any amendments or modifications thereof and shall cause appropriate provisions to be inserted in subcontracts to insure compliance therewith by all subcontracts subject thereto, and shall be responsible for the submission of the affidavits required of subcontractors thereunder, except as the Secretary of Labor may specifically provide for reasonable limitations, variations, tolerance and exemptions from the requirements thereof.

ARTICLE 25a.  <u>SOCIAL SECURITY UNEMPLOYMENT INSURANCE AND COMPENSATION ACTS</u>

The Contractor shall comply with the Social Security Act, and shall comply with and carry all policies of insurance required by the Longshoremen's and Harbor Worker's Compensation Act and such State Workmen's Compensation and unemployment insurance laws as are applicable, including such requirement as may be properly imposed pursuant to the Act of June 25, 1936, Title 40 U.S. Code, Section 290; provided, however, that the Contractor may be a self-insurer against the risks referred to in this Article 25a if it has duly qualified as such self-insurer under applicable provision of law.  If so requested by the Administration, the Contractor shall promptly furnish evidence satisfactory to the Administration that it has complied with all requirements of this Article 25a.

ARTICLE 25b.  <u>UTILIZATION OF SMALL BUSINESS CONCERNS</u>

(i)  It is the policy of the Government as declared by the Congress that a fair portion of the purchases and contracts for supplies and services for the Government be placed with small business concerns.

(ii)  The Contractor agrees to accomplish the maximum amount of sub-contracting to small business concerns that the Contractor finds to be consistent with the efficient performance of this Contract, and all job orders hereunder.

ARTICLE 25c.  <u>UTILIZATION OF CONCERNS IN LABOR SURPLUS AREAS</u>

It is the policy of the Government to place contracts with concerns which will perform such contracts substantially in areas of persistent or sub-stantial labor surplus where this can be done, consistent with the efficient performance of the contract, at prices no higher than are obtainable else-where.  The Contractor agrees to use his best efforts to place his subcontracts in accordance with this policy.  In complying with the foregoing and with paragraph (b) of Article 23c hereof, the Contractor in placing his subcontracts shall observe the following order of preference: (1)  persistent labor surplus area concerns which are also small business concerns; (2) other persistent labor surplus area concerns; (3) substantial labor surplus area concerns which are also small business concerns; (4) other substantial labor surplus area concerns; and (5) small business concerns which are not labor surplus area concerns.

ARTICLE 27.  <u>DISPUTES</u>

(a)  Any dispute arising under a job order or under this contract as to a question of fact, which is not disposed of by mutual agreement, shall be decided by the appropriate Coast Director who shall reduce his decision to writing and mail it to the Contractor at its regular place of business.  The Contractor  shall comply with such decision, whether the Contractor appeals from such decision or not.  The Contractor may within thirty (30) days from the receipt of written notice of such decision appeal in writing to the Maritime Administrator.  The decision of the Administrator shall be final and conclusive unless determined by a court of competent jurisdiction to

-4-

have been fraudulent, arbitrary, capricious or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with such appeal to the Administrator the Contractor shall be afforded an opportunity to be heard before the Administrator, or before the representative or representatives of the Administration appointed by the Administrator for the hearing of said appeal and to offer evidence in support of the appeal.  Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Coast Director's decision.

(b)  This "Disputes" article does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above; provided, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

ARTICLE 34.   RENEGOTIATION

(a)  To the extent required by law, this contract and all job orders thereunder are subject to the Renegotiation Act of 1951 (50 U.S.C.  App. 1211, et seq.), as amended, and to any subsequent act of Congress providing for the renegotiation of contracts.  Nothing contained in this Article shall impose any renegotiation obligation with respect to this contract and any job order hereunder or any subcontract thereunder which is not imposed by an act of Congress heretofore or hereafter enacted.  Subject to the foregoing, this contract and any job order hereunder, shall be deemed to contain all the provisions required by Section 104 of the Renegotiation Act of 1951, and by any such other act, without subsequent contract amendment specifically incorporating such provisions.

(b)  The Contractor agrees to insert the provisions of this Article 34, including this paragraph (b), in all subcontracts under this contract or any job order hereunder, as that term is defined in Section 103g of the Renegotiation Act of 1951, as amended, or as subcontracts are defined in such other act.

UNITED STATES OF AMERICA
DEPARTMENT OF COMMERCE
MARITIME ADMINISTRATION
WESTERN REGION

Date   October 11, 1972

SS   T.S. GOLDEN BEAR      GAA   - - - - -        VOY. #  1973 Cruise

APPROPRIATION SYMBOL   13X1703.20 340-26.10

MARAD-LUMPSUMREP Contract No. MA -295
Job Order No.   81

TO: TRIPLE A Machine Shop, Inc.            (Contractor)

    Pier 64

    San Francisco, California 92113

    This Job Order is issued this   11th    day of   October      19 72  ,

under and pursuant to the provisions of Contract No. MA-295      between the

UNITED STATES OF AMERICA and    Triple A Machine Shop, Inc.              .

(hereinafter called the "Contractor").

WITNESSETH THAT:

    1.  Work:  The Contractor shall perform the work upon the   TS GOLDEN BEAR
                                                                 Name of

_____,  described as follows: _____
          Vessel                                   (describe the nature

               Ventilation and General Repairs                          .

of the work and whenever necessary specify in attached specifications)

_____

    The work shall be performed under and pursuant to the provisions of

Contract No.   MA-295      , the terms of which by this reference is made

part hereof, and in conformity with the plans and specifications, if any, for

the work, which plans and specifications are attached hereto and made part

hereof.

    2.  Price:  The United States will pay the Contractor for the performance
                                               Ninety seven thousand three hundred
of the work covered by this Job Order the sum of   twenty-one and no/100

dollars ($97,321.00      ).

    3.  Time for Commencement and Completion:  The vessel will be made

available to the Contractor at   Vallejo, California      and the Contractor

shall commence work on   October 11     , 19 72 , and shall complete

work on or before        November 10      , 19 72 .

Page 2

4.  Liquidated Damages:  Pursuant to Article 18 of said contract entitled

"Liquidated Damages", the parties agree that the liquidated damages payable for

each calendar day of delay shall be $ 1,000.00               .

5.  Additional Provisions:_____ None _____

_____

_____

_____

Awarded on competitive bid  / X /           UNITED STATES OF AMERICA
                                            DEPARTMENT OF COMMERCE
                                            MARITIME ADMINISTRATION

                                    BY: *Leigh G. Miller*
                                        LEIGH G. MILLER, Region Ship Management Officer
            Receipt of the foregoing is hereby acknowledged and the price stated, dates

for commencement and completion of the work, and other terms and conditions are

hereby accepted.


    Triple A Machine Shop, Inc.
    _____
            (Contractor)

             *M. Belway*
    By: _____
            M. BELWAY - VICE PRES.
         (In addition to signature, type
          in name and state office held)


Note:  The original and two (2) copies
       of the Job Order are to be signed
       and returned to this Office.
       Retain one (1) copy for your file.



Itemized prices are to be furnished by the successful bidder, as a support to
its final invoice, covering the original bid specifications and all supplements
thereto.

The following certification shall be inserted by all contractors on all invoices
rendered covering work awarded under the Master Repair Contract subject to the
Anti-Kickback and Davis-Bacon Acts:

    "I hereby certify that in performing the work for which the invoice
    was rendered that all applicable terms and conditions of the Anti-
    Kickback and Davis-Bacon Acts as provided in the Master Repair
    Contract and regulations of the Department of Labor have been complied
    with."

## CERTIFICATE OF SERVICE BY ELECTRONIC FILING

***Dennis Payne, et al. v. Triple A Machine Shop, Inc., et al.***
**United States District Court, Northern District of California Case No.**

I, the undersigned, declare as follows:

I am employed in the County of San Francisco, California, and I am over the age of 18 years and not a party to the within action.  My business address is 1 Post Street, Suite 2400, San Francisco, CA 94104.

On the date executed below, I served the foregoing document(s) on the interested parties in this action as follows:

**DEFENDANT TRIPLE A MACHINE SHOP, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

☒  **BY ELECTRONIC SERVICE:** via the Electronic Court Filing (ECF) procedures and on recipients designated on the Transaction Report located on the file and serve website for the Court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **January 27, 2022**, at San Francisco, California.

_____
Amy Harkness