SCOTT L. FROST, ESQ., CA Bar No. 258063
scott@frostlawfirm.com
ANDREW SEITZ, ESQ., CA Bar No. 273165
andrew@frostlawfirm.com
**FROST LAW FIRM, PC**
273 West 7th Street
San Pedro, CA 90731
Tel.: (866) FLF-MESO
Fax: (833) FLF-MESO

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SUSAN PAYNE**, *Individually and as Successor-in-Interest to Decedent* **DENNIS C. PAYNE**, *and* **EMILY PAYNE** *and* **SAMUEL PAYNE**, *Individually*,<br><br>Plaintiffs,<br><br>vs.<br><br>**TRIPLE A MACHINE SHOP, INC.**; and **DOES 1 THROUGH 400** INCLUSIVE, et al.<br><br>Defendants. | Case No. 2:22-cv-00939-TLN-AC<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES (WRONGFUL DEATH AND SURVIVAL ACTION)** (STRICT LIABILITY – MARITIME LAW; STRICT LIABILITY – CALIFORNIA LAW; NEGLIGENCE – MARITIME LAW; NEGLIGENCE – CALIFORNIA LAW; FALSE REPRESENTATION; INTENTIONAL TORT / INTENTIONAL FAILURE TO WARN; LOSS OF CONSORTIUM) |

**<u>GENERAL ALLEGATIONS – ALL DEFENDANTS</u>**

COME NOW Plaintiffs **SUSAN PAYNE**, *Individually and as Successor-in-Interest to Decedent* **DENNIS C. PAYNE**, *and* **EMILY PAYNE** *and* **SAMUEL PAYNE**, *Individually*, (hereinafter "Plaintiffs") and complains and alleges as follows:

1.      Plaintiffs' Decedent in this action, DENNIS C. PAYNE, sustained asbestos-related lung injuries, resulting in his death, as a result of his inhalation of asbestos fibers

through his exposure to asbestos. Plaintiff SUSAN PAYNE was the wife of Decedent at the time of his diagnosis and death, and is Decedent's successor-in-interest. Plaintiffs EMILY PAYNE and SAMUEL PAYNE are Decedent's children.

2.      A portion of this case is a case of Admiralty and Maritime Jurisdiction and is a claim within the meaning of F.R.C.P. 9(h). The locations of Decedent PATRICK W. DENNIS's exposure relevant to Defendant **TRIPLE A MACHINE SHOP, INC.** were on navigable waters, and his exposure occurred in connection with traditional maritime activity, as specified in "Exhibit A." The "saving to suitors" clause of 28 U.S.C. Section 1333 allows Plaintiffs to pursue State claims in addition to Plaintiffs' maritime claims.

3.      The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 400, inclusive, are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Decedent and the Plaintiffs, as hereinafter alleged.

4.      At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venturer of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, **TRIPLE A MACHINE SHOP, INC.**; and DOES 1-400 INCLUSIVE were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants. and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants,

PLAINTIFFS' FIRST AMENDED COMPLAINT

and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of Alameda, State of California.

5.    At all times herein mentioned, each of the named Defendants and DOES 1 through 400 was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in, an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business. successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing. warranted, re-branded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing said asbestos. The Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

///

///

# FIRST CAUSE OF ACTION

## (Strict Liability – Design Defect / Manufacturing Defect / Failure to Warn – Maritime Law)

PLAINTIFFS COMPLAIN OF TRIPLE A MACHINE SHOP, INC. AND DOES 1-200, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT LIABILITY UNDER MARITIME LAW AND ALLEGE AS FOLLOWS:

6.    At all times herein mentioned, Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying. labeling, assembling, distributing, leasing, buying. offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended.

7.    Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

8.    Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said asbestos and asbestos-containing products at the time they left the possession of the Defendants, their "alternate entities," and each of them. Said asbestos and asbestos-containing products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to users, consumers, workers, bystanders, and others, including Decedent herein (hereinafter collectively called "exposed persons"), while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

9.      At all times mentioned herein, the above-referenced asbestos and asbestos-containing products failed to perform as safely as an ordinary consumer and/or other "exposed persons" would expect when used in an intended or reasonably foreseeable manner, and/or the risk of danger inherent in this substance and products outweighed the benefits of said substance and products.

10.     At all times mentioned herein, the foreseeable use of said asbestos and asbestos-containing products involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, or other "exposed persons," but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

11.     "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said Defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which Decedent DENNIS C. PAYNE and others similarly situated were exposed.

12.     Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products and equipment would be used or handled as specified in Exhibit "A", which is attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would be in proximity to and exposed to said asbestos fibers.

13.     Decedent DENNIS C. PAYNE has used, handled, or otherwise been exposed to asbestos and asbestos-containing products and equipment referred to herein in a manner that was reasonably foreseeable. Decedent DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

14.     As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Decedent DENNIS C. PAYNE's

exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Decedent, including his death, the nature of which, along with the date of Decedent DENNIS C. PAYNE's diagnosis and the date he learned such injuries were attributable to exposure to asbestos and/or asbestos-containing products, are set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

15.    Plaintiffs are informed and believe, and thereon alleges, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

16.    Decedent DENNIS C. PAYNE suffered from malignant mesothelioma, caused by an exposure to asbestos and asbestos-containing products and equipment. Decedent DENNIS C. PAYNE was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

17.    As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Decedent DENNIS C. PAYNE suffered permanent injuries and/or future increased risk of injuries to his person, body and health, including. but not limited to, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in a sum in excess of the jurisdictional limit of a limited civil case.

18.    As a direct and proximate result of the aforesaid conduct of the Defendants. their "alternate entities," and each of them. Decedent DENNIS C. PAYNE has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.    As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities," Plaintiffs have incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses,

the full nature and extent of which are not yet known to Plaintiffs, and leave is requested to amend this complaint to conform to proof at the time of trial.

20.    In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of said Defendants, their "alternate entities," and each of them, on or before 1930, and thereafter.

21.    On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate entities," and each of them, knew that members of the general public, and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

22.    With said knowledge, said Defendants, their "alternate entities, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death

resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public, that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

23.    The above-referenced conduct of said Defendants, their "alternate entities," and each of them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing produces. In pursuance of said financial motivation, Defendants, their "alternate entities," and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent DENNIS C. PAYNE.

24.    Defendants, their "alternate entities," and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

25.    Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them,

and each Defendants' officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

26.    The herein-described conduct of said Defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

27.    Plaintiffs allege that the aforementioned Defendants, their "alternate entities," and each of them, impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to Decedent DENNIS C. PAYNE.

28.    Plaintiffs further allege that Decedent DENNIS C. PAYNE's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled,  distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned Defendants, their "alternate entities," and each of them, all of which were a substantial contributing factor to Decedent's development of the asbestos disease complained of herein.

29.    Decedent DENNIS C. PAYNE relied upon Defendants, their "alternate entities," and each of their representations, lack of warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Plaintiffs and Decedent have been injured permanently as alleged herein.

30.     As a direct and proximate result of the actions and conduct outlined herein, Decedent DENNIS C. PAYNE and Plaintiffs have suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Strict Liability – Design Defect / Manufacturing Defect / Failure to Warn – California Law)**

AS AND FOR A SECOND, SEPARATE, FURTHER, AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY UNDER CALIFORNIA LAW, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

31.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First Cause of Action herein.

32.     At all times herein mentioned, Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying. labeling, assembling, distributing, leasing, buying. offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising a certain substance, the generic name of which is asbestos and other products containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended.

33.     Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

34.    Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said asbestos and asbestos-containing products at the time they left the possession of the Defendants, their "alternate entities," and each of them. Said asbestos and asbestos-containing products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to users, consumers, workers, bystanders, and others, including Decedent herein (hereinafter collectively called "exposed persons"), while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

35.    At all times mentioned herein, the above-referenced asbestos and asbestos-containing products failed to perform as safely as an ordinary consumer and/or other "exposed persons" would expect when used in an intended or reasonably foreseeable manner, and/or the risk of danger inherent in this substance and products outweighed the benefits of said substance and products.

36.    At all times mentioned herein, the foreseeable use of said asbestos and asbestos-containing products involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, or other "exposed persons," but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

37.    "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said Defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which Decedent DENNIS C. PAYNE and others similarly situated were exposed.

38.    Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products and equipment would be used or handled as specified in Exhibit "A", which is attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos

fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would be in proximity to and exposed to said asbestos fibers.

39.     Decedent DENNIS C. PAYNE has used, handled, or otherwise been exposed to asbestos and asbestos-containing products and equipment referred to herein in a manner that was reasonably foreseeable. Decedent DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

40.     As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Decedent DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent and the Plaintiffs, the nature of which, along with the date of Decedent DENNIS C. PAYNE's diagnosis and the date he learned such injuries were attributable to exposure to asbestos and/or asbestos-containing products, are set forth in Exhibit "B", which is attached hereto and incorporated by reference herein.

41.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

42.     Decedent DENNIS C. PAYNE suffers from malignant mesothelioma, caused by an exposure to asbestos and asbestos-containing products and equipment. Decedent DENNIS C. PAYNE was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

43.     As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Decedent DENNIS C. PAYNE suffered permanent injuries and/or future increased risk of injuries to his person, body and health, including. but not limited to, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in a sum in excess of the jurisdictional limit of a limited civil case.

44.    As a direct and proximate result of the aforesaid conduct of the Defendants. their "alternate entities," and each of them. Decedent DENNIS C. PAYNE has incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

45.    As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities," Plaintiffs have incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs, and leave is requested to amend this complaint to conform to proof at the time of trial.

46.    In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of said Defendants, their "alternate entities," and each of them, on or before 1930, and thereafter.

47.    On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate entities," and each of them, knew that members of the general public, and other "exposed persons", who came

in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

48.    With said knowledge, said Defendants, their "alternate entities, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public, that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

49.    The above-referenced conduct of said Defendants, their "alternate entities," and each of them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing produces. In pursuance of said financial motivation, Defendants, their "alternate entities," and each of them, consciously disregarded the safety

of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent DENNIS C. PAYNE.

50.    Defendants, their "alternate entities," and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

51.    Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each Defendants' officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

52.    The herein-described conduct of said Defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

53.    Plaintiffs allege that the aforementioned Defendants, their "alternate entities," and each of them, impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to Decedent DENNIS C. PAYNE.

54.    Plaintiffs further allege that Decedent DENNIS C. PAYNE's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled,  distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by

the aforementioned Defendants, their "alternate entities," and each of them, all of which were a substantial contributing factor to Decedent's development of the asbestos disease complained of herein.

55.     Decedent DENNIS C. PAYNE relied upon Defendants, their "alternate entities," and each of their representations, lack of warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent and Plaintiffs have been injured permanently as alleged herein.

56.     As a direct and proximate result of the actions and conduct outlined herein, Decedent DENNIS C. PAYNE and Plaintiffs have suffered the injuries and damages alleged herein

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities," and each of them, as hereinafter set forth.


## THIRD CAUSE OF ACTION

### (Negligence / Negligent Failure to Warn – Maritime Law)

AS AND FOR A THIRD, SEPARATE, FURTHER, AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE UNDER MARITIME LAW, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-200, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

57.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First and Second Causes of Action herein.

58.     At all times herein mentioned, Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and

advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended, in that said substance proximately caused personal injuries to "exposed persons," while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons."

59.    Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

60.    Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity of and exposed to said asbestos fibers.

61.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs and Decedent have suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

///
///
///
///
///

# FOURTH CAUSE OF ACTION

## (Negligence / Negligent Failure to Warn – California Law)

AS AND FOR A FOURTH, SEPARATE, FURTHER, AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE UNDER CALIFORNIA LAW, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

62.    Plaintiffs incorporate herein by reference, as though fully set forth therein, the allegations contained in the First, Second, and Third Causes of Action herein.

63.    At all times herein mentioned, Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, including but not limited to products containing said substance that were required in order for Defendants' products to function as intended, in that said substance proximately caused personal injuries to "exposed persons," while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons."

64.    Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

65.    Defendants, their "alternate entities," and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing,

soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity of and exposed to said asbestos fibers.

66.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs and Decedent have suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities," and each of them, as hereinafter set forth.


## FIFTH CAUSE OF ACTION

### (False Representation Under Restatement of Torts Section 402-B)

AS AND FOR A FURTHER FIFTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF ALL DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

67.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First, Second, Third, and Fourth Causes of Action.

68.    At the aforementioned time when Defendants, their "alternate entities," and each of them, researched, manufactured, fabricated, designed, modified, rested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities," and each of them, expressly and impliedly represented to members of the general public, including the

purchasers and users of said product, and other "exposed persons", including, without limitation, Decedent DENNIS C. PAYNE and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

69.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons" including, without limitation, Decedent DENNIS C. PAYNE, and his employers, relied upon said representations of Defendants, their "alternate entities," and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

70.     Said representation by Defendants, their "alternate entities," and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons, including Decedent DENNIS C. PAYNE herein.

71.     As a direct and proximate result of said false representations by Defendants, their "alternate entities," and each of them, Plaintiffs and Decedent sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

///

///

///

///

# SIXTH CAUSE OF ACTION

## (Intentional Tort/Intentional Failure to Warn/Concealment)

AS AND FOR A FURTHER SIXTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

72.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First, Second, Third, Fourth and Fifth Causes of Action herein, excepting there from allegations pertaining to negligence.

73.    At all times pertinent hereto, the Defendants, their "alternate entities," and each of them, owed Decedent a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property, or rights of the Decedent. When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Decedent as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their "alternate entities," and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of the Decedent as provided for in the aforementioned Civil Code sections.

74.    Since on or before 1930, the Defendants, their "alternate entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing

products and equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health and safety of Decedent, and others in Decedent DENNIS C. PAYNE's position working in close proximity with such materials. The Defendants, their "alternate entities," and each of them. have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Decedent DENNIS C. PAYNE, and others in Decedent's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)    Defendants, their "alternate entities," and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Decedent and others in Decedent's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities," and each of them, since on or before 1930. By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities," and each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent DENNIS C. PAYNE to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)    Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "alternate entities," and each of them, were bound to disclose such information;

(c)    Defendants, their "alternate entities," and each of them, sold the aforementioned products, materials, and equipment to Decedent DENNIS C. PAYNE's employers, the employers of Decedent, and others without advising Decedent DENNIS C. PAYNE, his employers, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities," and each of them, caused to be positively asserted to Decedent DENNIS C. PAYNE that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Decedent DENNIS C. PAYNE to work in close proximity to such materials;

(d)    Defendants, their "alternate entities," and each of them, suppressed from Decedent medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities," and each of them, influenced A.J. Lanza, M.D. to change his report, the altered version of which was published in <u>Public Health Reports, Volume 50</u>, at page 1, in 1935, thereby causing Decedent and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused <u>Asbestos Magazine</u>, a widely disseminated trade Journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)    Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and  other industry organizations which, for and on behalf of Defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Decedent DENNIS C. PAYNE by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene

Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Decedent. Such facts did mislead Decedent and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Decedent DENNIS C. PAYNE the true facts concerning such knowledge of danger, which Defendants, their "alternate entities," and each of them, were bound to disclose;

(g)    Defendants, their "alternate entities," and each of them, failed to warn Decedent DENNIS C. PAYNE, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact, that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)    Defendants, their "alternate entities," and each of them, failed to provide Decedent DENNIS C. PAYNE with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities," and each of them, despite knowing that such

protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Decedent DENNIS C. PAYNE and others applying and installing such material;

(i)    Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from Decedent DENNIS C. PAYNE the true nature of the industrial exposure of Decedent DENNIS C. PAYNE and knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from Decedent DENNIS C. PAYNE and others that harmful materials to which they were exposed would cause to pathological effects without noticeable trauma;

(j)    Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Decedent DENNIS C. PAYNE so that said physicians could not examine, diagnose, and treat Decedent and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k)    Defendants, their "alternate entities," and each of them, failed to provide adequate information to physicians and surgeons retained by Decedent DENNIS C. PAYNE's employers and their predecessor companies, for purposes of making physical examinations of Decedent DENNIS C. PAYNE and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

75.    Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Decedent's injuries, as required by law, and did willfully fail and omit to file a Report of

Injury and Occupational Disease with the State of California. Decedent DENNIS C. PAYNE was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected there by if the fact of danger from products complained of had become known.

76.    Defendants, their "alternate entities," and each of them, having such aforementioned knowledge, and the duly to inform Decedent DENNIS C. PAYNE about the true facts, and knowing the Decedent DENNIS C. PAYNE did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Decedent DENNIS C. PAYNE to remain unaware of the true facts and to induce Decedent DENNIS C. PAYNE to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the <u>Civil Code of the State of California</u>.

77.    As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities," and each of them, Decedent DENNIS C. PAYNE sustained the injuries and damages alleged herein. The herein-described conduct of said Defendants, their "alternate entities," and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Loss of Consortium)

AS AND FOR A FURTHER SEVENTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF SUSAN PAYNE COMPLAINS OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

78.     Plaintiff SUSAN PAYNE hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the First through Sixth Causes of Action herein.

79.     Decedent DENNIS C. PAYNE and Plaintiff SUSAN PAYNE were married on November 27, 1976, and up to and including the current date have been husband and wife.

80.     Prior to Decedent DENNIS C. PAYNE's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Decedent DENNIS C. PAYNE was unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service, and duties in the future. As a proximate result thereof, Plaintiff SUSAN PAYNE has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

81.     Plaintiff SUSAN PAYNE's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

82.     As a direct and proximate result of the acts of Defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Decedent DENNIS C. PAYNE, as set forth in this complaint, Plaintiff SUSAN PAYNE has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited to, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiff prays for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

## <u>PRAYER FOR RELIEF - ALL DEFENDANTS / ALL CAUSES OF ACTION</u>

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, in an amount to be proved at trial in each individual case, as follows:

1.    For Plaintiffs' general damages according to proof;

2.    For Plaintiffs' loss of income, wages, and earning potential according to proof;

3.    For Plaintiffs' medical and related expenses according to proof;

4.    For Plaintiffs' cost of the suit herein;

5.    For Plaintiffs' damages for loss of love, companionship, comfort, affection, solace, moral support, and/or society according to proof.

6.    For exemplary or punitive damages according to proof.

7.    For damages for fraud according to proof; and

8.    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, section 1032, and related provisions of law.


DATED: November 8, 2023                         FROST LAW FIRM, PC


                                                By:_/s/ Andrew Seitz_____
                                                   ANDREW SEITZ
                                                   Attorneys for Plaintiffs

# DEMAND FOR JURY TRIAL

Plaintiffs also by this pleading demand a jury trial on all issues set forth hereinabove and as shall or might arise pursuant to the same.

DATED: November 8, 2023                              FROST LAW FIRM, PC


                                                By: _/s/ Andrew Seitz_____
                                                ANDREW SEITZ
                                                Attorneys for Plaintiffs

PLAINTIFFS' FIRST AMENDED COMPLAINT

## EXHIBIT "A"

Decedent DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products occurred at various locations within the state of California and around the world, including, but not limited to:

| Location of Exposures | Job Title | Exposure Dates (Approximate) |
|---|---|---|
| T.S. Golden Bear II (formerly USS Crescent City)<br><br>California State University Maritime Academy Vallejo, California<br><br>Long Beach Naval Shipyard Los Angeles, California<br><br>Various ports around the Pacific Ocean and Caribbean Sea | Maritime Academy student | August 1972 to Summer of 1975 |

PLAINTIFFS' FIRST AMENDED COMPLAINT

## EXHIBIT "B"

Decedent DENNIS C. PAYNE's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Decedent including, but not limited to, breathing difficulties, asbestosis, mesothelioma, lung and/or other cancer, and/or lung damage, eventually resulting in his death. Decedent DENNIS C. PAYNE was diagnosed with malignant mesothelioma on or about December 2019.

Decedent DENNIS C. PAYNE was not retired at the time he was diagnosed with malignant mesothelioma.

Decedent DENNIS C. PAYNE died of mesothelioma on or about September 12, 2022.

PLAINTIFFS' FIRST AMENDED COMPLAINT

# CERTIFICATE OF SERVICE

I declare that I am over the age of 18, not a party to the above-entitled action, and am an employee of Frost Law Firm, PC whose business address is 273 West 7th Street, San Pedro, California 90731.

On November 9, 2023, I served the following document(s) in the following manner(s):

## PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES (WRONGFUL DEATH AND SURVIVAL ACTION)

On the following:

## ALL COUNSEL OF RECORD

☒    (By CM/ECF) By transmitting electronically via CM/ECF the document(s) listed above as set forth on the electronic service list on this date before 11:59 p.m.

☒    (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on November 9, 2023.

/s/ Rahul Madahar
An Employee of Frost Law Firm, PC